# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 24-401 consolidated with 24-402, 24-403

**COURTLAND TATUM, SR.**

**VERSUS**

**STATE FARM MUTUAL AUTOMOBILE INSURANCE CO., ET AL.**

**\*\*\*\*\*\*\*\*\*\***

APPEAL FROM THE
NINTH JUDICIAL DISTRICT COURT
PARISH OF RAPIDES, NO. 266,220
HONORABLE LOWELL C. HAZEL, DISTRICT JUDGE

**\*\*\*\*\*\*\*\*\*\***

## SHANNON J. GREMILLION
## JUDGE

**\*\*\*\*\*\*\*\*\*\***

Court composed of Shannon J. Gremillion, Charles G. Fitzgerald, and Guy E. Bradberry, Judges.

**AFFIRMED.**

**Courtland Tatum, Sr.**
**IN PROPER PERSON**
**P.O. Box 4830**
**Pineville, LA 71360**
**IN PROPER PERSON**

**Paul M. Lafleur**
**Stafford, Stewart & Potter**
**3112 Jackson Street**
**Alexandria, LA 71301**
**(337) 487-4910**
**COUNSEL FOR DEFENDANTS/APPELLEES:**
    **State Farm Mutual Automobile Insurance Company**
    **Mark Kinman, III.**
    **Cassandra Kinman**

**Katherine Paine Martin**
**Kaitlyn E. Bourg**
**Porteous, Hainkel & Johnson, LLP**
**200 Beaullieu Dr., Bldg #3A**
**Lafayette, LA 70508**
**(337) 291-2440**
**COUNSEL FOR DEFENDANTS/APPELLEES:**
    **State Farm Mutual Automobile Insurance Company**
    **Tereasa Doyle**

**Brian Thomas Carr**
**Attorney at Law**
**4636 Sanford St. Suite 100**
**Metairie, LA 70006**
**(504) 888-5030**
**COUNSEL FOR DEFENDANT/APPELLEE:**
    **James Coohoon**

**GREMILLION, Judge.**

From the trial court's grant of a directed verdict, the plaintiff/appellant, Courtland Tatum, Sr., appeals. For the reasons that follow, we affirm.

## FACTS AND PROCEDURAL POSTURE

*The accidents*

Tatum was involved in three accidents on separate dates at the intersection of Fenner and Overton Streets in Alexandria, Louisiana. In the first accident (our docket 42-401), which occurred on January 6, 2019, and the subject of this matter, Tatum was in the right lane of Fenner Street facing east attempting to turn left onto Overton, which is a one-way street flowing north. Both the left and right lanes of Fenner are allowed to turn left onto Overton. Mark Kinman, III, was in the left lane, also intending to turn left onto Overton. The intersection is governed by a traffic light. Tatum alleged that when the light turned green, he began making his left turn into the right lane of Overton. Kinman, Tatum alleges, "turned wide in his left lane to miss a pothole, crashing into [Tatum's] 2008 Cadillac CTS."

In docket number 24-402, which originated in Alexandria City Court, Tatum alleged that on June 30, 2019, he was in the right lane of Fenner intending to turn left onto Overton. Tereasa Doyal occupied the left lane. When the light changed to green, both cars began executing their left turns. Doyal allegedly turned too wide and struck Tatum. Tatum later moved to have the case transferred to the Ninth Judicial District Court based upon the amount allegedly in dispute.

The third of the accidents (docket number 24-403) involving Tatum occurred on December 23, 2019. Tatum again occupied the right lane and was turning left onto Overton. On this occasion, James Coohon turned too wide and struck Tatum.

*Pretrial posture*

In June 2021, Coohon moved to consolidate the three cases for trial. An order consolidating the three cases for trial was signed by the court on November 3, 2021.

*The trial*

The jury trial of the three matters was held on January 31, 2023. Tatum represented himself throughout the proceeding in the suits against Kinman and Coohon. His counsel in the Doyal case withdrew shortly before the matter was transferred from city court to district court. Tatum appeared in proper person from that point forward.

After the trial court gave opening instructions, the jury recessed briefly to make childcare and similar arrangements. Tatum requested that all witnesses be sequestered. Only Tatum intended to call a non-party witness, though, so the trial court refused to sequester the parties over Tatum's objection. Tatum's one witness, Mark Anthony Hammond, Sr., was sequestered, and the trial proceeded.

Tatum played dashcam video recorded during the Coohon accident. He stated that while he had been involved in eight accidents at the intersection, none were his fault. "I have because there's people like Mr. Coohon that is not paying attention at this intersection at all." Tatum admitted that he was involved in another accident on January 11, 2019, five days after the Kinman collision.

Hammond testified as part of Tatum's case. He lived on Fenner near the intersection with Overton and witnessed the Doyal accident. He testified that Doyal was attempting to change lanes and struck Tatum. One of the drivers was transported from the scene by ambulance. Many accidents have occurred at this intersection, and all happen in the same way, according to Hammond, who characterized the intersection as dangerous. There is no striping to delineate each driver's lane as they turn.

2

Mr. Kinman testified that he had purchased his Ford Mustang the day before the accident and was driving it home to Jonesboro, Louisiana. He was familiar with the intersection because he grew up in Pineville, Louisiana. Mr. Kinman described waiting at the intersection for the light to turn green. He did not see Tatum beside him. He described the collision as "kind of rim-to-rim." The cars collided as both were still turning. Mr. Kinman believed the collision occurred in his lane.

Cassandra Kinman was a passenger in her husband's car. She testified that she did not see a vehicle in the lane next to her. As the vehicle was turning, Mrs. Kinman felt the collision. She did not see the collision because she was looking at her phone.

Tereasa Doyal is a resident of Kinder, Louisiana. She was driving a vehicle that was involved in a collision with that driven by Tatum on June 30, 2019. Doyal's husband was a passenger in her car. She testified that she could not see any markings to delineate the lanes. She described the collision:

> Like I said, as I came up to the intersection the light turned red. I proceeded to stop and while I was stopped I noticed a vehicle pull up into the right hand lane and that was you [Tatum], which the car was so close to mine that it could have been touched from inside my vehicle. . . . I was making the left hand turn and the vehicle which was you that was beside me on—in the right hand lane, which was also a left turn lane proceeded to track my vehicle as we were turning. And as we were turning it seemed like suddenly your vehicle turned more left than mine turned and that's whenever the vehicles impacted.

Tatum testified. He stated that in the January 6, 2019, collision, Mr. Kinman was looking over his shoulder when the accident occurred. The force of the collision caused Tatum to lose control of his car and come to rest on the side of the road after jumping the curb.

About the June 30, 2019 collision, Tatum testified that Doyal turned too wide and struck his vehicle. He described the collision as "more like a T-bone situation." He could not get out of the vehicle on his own. Hammond assisted him. "When the

3

ambulance and the firefighters did show up I was too weak to stand so I had to sit down."

Tatum said that Coohon turned too wide in the December 23, 2019, collision. His twenty-month-old son was transported from the scene by ambulance.

In each accident, Tatum claimed to be completely free from any fault. He attributed the accidents to drivers in the left hand lane turning too wide.

After Tatum concluded his testimony, the following colloquy occurred:

BY THE COURT:

Okay. All right. You're – you're done with your testimony?

BY MR. TATUM:

Sure.

BY THE COURT:

Okay. Now, you have to -- you get -- you're subject to cross examine by the other attorneys.

BY MR. TATUM:

That's fine.

BY THE COURT:

Okay. Did y'all -- do y'all want to reserve your cross or do you want to ..

BY MS. MARTIN:

We'll reserve ..

BY MR. CARR:

Yes, we'll reserve.

BY MS. MARTIN:

.. our cross.

BY THE COURT:

Okay. All right. Okay. They're okay, you may step down

BY MR. TATUM:

Okay.

BY THE COURT:

Thank you. The attorneys have preserved their right to come back to this later. And you can return to your seat. Mr. Tatum, do you have another witness?

BY MR. TATUM:

No, sir, that's it.

BY THE COURT:

Okay. Is that -- do you rest or is that -- is that your case -in -chief, the end of it?

BY MR. TATUM:

Uh, I may have another question for one or two of the witnesses later.

BY THE COURT:

But, for your case -in -chief, if they're called upon -- if they're called as witnesses you're entitled to cross them.

BY MR. TATUM:

Okay. That's fine.

BY THE COURT:

But, what I'm asking you is that, is this all -- is this -- is this your case that you'd like to submit to the jury?

BY MR. TATUM:

Yes, that's it.

**PLAINTIFF RESTS**

. . . .

BY MR. LAFLEUR:

We have motions to make, Your Honor.

5

BY THE COURT

Okay.

BY MR. LAFLEUR:

And they need to be outside the presence of the jury.

BY THE COURT:

Yes. No, we have to do that.

At this point, the jury exited the courtroom, and counsel for all defendants joined in a motion for directed verdict, because Tatum introduced no evidence on the issue of damages, either in the form of special damages or testimony about his alleged injuries.

## DEFENDANTS MOVE FOR DIRECTED VERDICT

BY MS. MARTIN:

At this time, Your Honor, the defendants would move for a directed verdict on the grounds that although there was some evidence regarding liability dispute there was no evidence whatsoever regarding damages sustained in terms of not a single medical bill, not a single medical record, not a single medical opinion. There was no evidence whatso -- so, even if they found in his favor in terms of liability he's still would not be entitled to any reward – award.

BY MR. CARR:

And I would add that there was no testimony as to any injury itself. He said. . .

BY MS. MARTIN:

Exactly.

BY MR. CARR:

.. ambulances came but there was no testimony as to any injury, Your Honor. And as this Court's aware, in my case I've had a ruling already that he can't present any evidence anyway. So, he hasn't . . .

BY MS. MARTIN:

6

He hasn't.

BY MR. CARR

.. as far as documentation, he has no way to prove damages. So, even if he proved liability, there's nothing for him to recover. There's nothing to present to the jury as far as any damages

BY MR. LAFLEUR:

Your Honor, the Kinmans and State Farm join in this motion. This -- these are suits for personal injuries not just suits to establish liability. There is absolutely no evidence before the Court to establish any injury or damage resulting therefrom.

BY MR. CARR:

And so the record is clear, James Coohon as counselor for James Coohon I make the same motion, Your Honor

BY MS. MARTIN:

And Tereasa Doyal and State Farm do as well

BY THE COURT:

Okay. All right. I tell you what, I'm going to stand in recess for about I'm going to stand in recess for a few minutes.

BY MS. MARTIN:

Sure

BY MR. CARR:

Yes, Your Honor

BY MR. TATUM ;

Can I say something on the record?

BY THE COURT:

Sure, yes.

BY MR. TATUM:

To those motions, I ask that you deny them because I have sent all medical bills to them and they have those medical bills. Paul Lafleur has medical bills.

BY THE COURT:

What they're saying -- not to cut you off, Mr. Tatum, what they're saying is, in your case -in -chief, I think, what the -- not to speak for the defense but, I think, what the attorneys are saying is that what's something that's discoverable, what's something that you send to someone or even if you did or didn't, it wasn't presented in Court. Does that ..

BY MR. TATUM:

I haven't ..

BY THE COURT:

.. make sense to you?

BY MR. TATUM:

.. -- I haven't gotten a chance to present my evidence for the medical bills.

BY MS. MARTIN:

You already rested your case.

BY MR. CARR:

You rested your case. He asked if you had anything else.

BY MR. TATUM:

Y'all playing games.

BY THE COURT:

No, there's no games here.

BY MR. CARR:

It's the same standards.

BY MR. TATUM:

So, you mean to tell me ..

BY THE COURT:

Yes.

BY MR. TATUM:

.. that there's no, what Katie said, there's no evidentiary hearing, is what she said earlier.

BY THE COURT:

There's -- there's -- you have to speak up, please.

BY MR. TATUM:

There's no evidentiary hearing.

. . . .

BY MR. CARR:

There's no evidence to have a hearing on at this point.

BY MS. MARTIN:

There's no evidence ..

BY MR. TATUM:

It is evidence to have a hearing on

BY THE COURT:

It wasn't submitted, is what they're trying to say is that if you -- I go to Dr. McBride, he's one of my physicians, I go to Dr. McBride.  When I finish he gives me a piece of paper that shows what I did there, it shows what – it shows what I paid, it shows what my blood pressure was, what my – whatever it is I went to go see Dr. McBride, he kicks me back something and I could go and -- I could demonstrate that to someone or -- does that make sense to you?

BY MR. TATUM:

I can demonstrate that today or tomorrow.

BY THE COURT:

But you didn't choose to do that.  I can't try your case for you. I'm sorry ..

BY MR. TATUM:

9

I didn't -- I didn't ..

BY THE COURT:

.. -- I'm sorry that I can not.

BY MR. TATUM:

What I took in is, you saying that I rest my case for today because you was discussing ..

BY THE COURT:

No.

BY MR. TATUM:

.. with them about ..

BY :THE COURT

No, no, I did not say that.

BY MR. TATUM:

No, no, no . .

BY THE COURT:

Don't make aspirations[sic] . .

BY MR. TATUM:

.. that's what I took ..

BY THE BAILIFF:

One at a time -- one at a time.

BY THE COURT:

. . -- don't sit -- no, don't -- don't the Court has not done that, no, sir.

BY MR. TATUM:

I didn't say the Court did that.

BY THE COURT:

That's not acceptable.

BY MR. TATUM:

I didn't say you did it.

BY THE COURT:

No, I did not do that.  I asked you ..

BY MR. TATUM:

I didn't say -- I said . .

BY THE COURT:

.. multiple times, I asked you.  And finally, Mr. Carr even said, does that mean that he has rested and I said yes you said yes.

BY MR. TATUM:

You mentioned something about two days for a trial, so, I'm thinking ..

BY THE COURT:

Yes, that's the possibility that a trial may extend that long.  It goes like this, you, the plaintiff gets to present a case.  When the plaintiff is finished if they've made a case-in-chief then the defense will make a case.  And if they will make a case then if they make a case then you can -- you can add other things called rebuttal, does that make sense to you?  But, you rested though.  You can not put anymore -- now, if they were to continue and if they – when they call witnesses then you would -- you're entitled to cross examine them and then they can redirect and you can recross and it can go back and forth, like ping pong, like tennis back and forth.  But, it's not -- but -- but, you chose to rest.  You said you were finished.  Is that true?

BY MR. TATUM:

I said I was finished but I'm thinking that it was for just today because you was discussing about leaving from 4 to 4:30.

BY THE COURT:

Yes.

BY MR. TATUM:

And I agreed to that.  I'm not agreeing to rest on my case like that.  Nobody is coming in here like that, not even me.

BY THE COURT:

> You did though, sir. Unfortunately, you did. Okay. All right. You finished? Now, I'm going to take a recess. Is there something else that you would like to add, sir, Mr. Tatum?

)NO RESPONSE FROM MR. TATUM)

The trial court then stood in recess. When court reconvened, the trial court ruled:

BY THE COURT:

> Okay. All right. At this stage, I've kind of vacillated back and forth. I'm going to deny the motion. I think it's stretching it a little bit but there's still a material issue of – of liability. Obviously, damages is that's not on the table but, I'm just going to -- I'm going to deny the motion. Obviously, y'all can re -urge the motion but, I'm going to have let's -- if y'all put on a case, let's see how -- let's see how it goes before if y'all want to re - urge the motion after you might have felt like you're at that spot. I think you're pretty close but I just -- I think, it'd be a little cleaner just, I think, we're at a good segue right now. We can release the jury. Did you get their contact information, Mrs. Donna? Excellent. Thank you. We can bring them in.

All counsel then queried how they were to proceed without waiving their clients' rights. They argued that absent a showing of damages, even had defendants stipulated to liability, a plaintiff who has proven no damages cannot prevail. The trial court then turned to Tatum, who pleaded that he did not understand that by resting he forfeited his right to put on other evidence. All medical had been supplied to the defendants in discovery. When the trial court referenced his "case in chief," Tatum argued, he did not understand what that meant. Tatum was asked by the trial court when he thought he was going to present his medical evidence. He responded, "I figured it was -- they trying to whatever they needed to do and then I could come back and do that." Because counsel for Doyal mentioned medical evidence in her opening, Tatum was "thinking, it's her turn to do some or one of them's turn to do some. . .and then I can come back. . .and present the rest of my case." He pleaded

12

ignorance of court procedure throughout the hearing on defendants' motions. The trial court then reversed course and granted the motions for directed verdict.

Judgment was signed on February 15, 2023. This appeal followed.

## ASSIGNMENTS OF ERROR

Tatum assigns the following as errors:

1. **Whether trial court's jury instructions were erroneous:** appellant asserts there were not proper instructions, or a detailed description of appellant's case provided to jury by trial court.

2. **Whether trial court erred in not placing witnesses under sequestration:** appellant contends that trial court erred in not placing defendants and witnesses under La. C.E. art. 615 Exclusion of Witnesses in a consolidated case. Article 615 states, as a matter of right: The court may, on its own motion, and shall, on request of a party, order that witnesses be excluded from the courtroom or from a place where they can see or hear the proceedings. Witnesses are also required to refrain from discussing the facts of the case with anyone other than counsel in the case. In the interests of justice, the court may exempt any witness from its order of exclusion.

3. **Whether trial court erred in excluding key evidence presented by appellant:** appellant argues that trial court's exclusion of critical evidence was an abuse of discretion and prejudiced appellant's ability to present a full and fair case.

4. **Whether trial court erred in granting a directed verdict in favor of appellee:** appellant contends that trial court improperly granted a directed verdict by allowing conclusory statements by appellees' attorney to outweigh previously submitted evidence, not allowing appellant to present all evidence in his case fully.

5. **Whether trial court erred in granting summary judgment in favor of appellee:** appellant contends that trial court improperly granted summary judgment by failing to consider material facts in dispute and by misapplying relevant law.

## ANALYSIS AND DISCUSSION

We will first discuss assignments of error 1, 2, and 5, as these assignments are most expeditious to address.

In his first assignment of error, Tatum argues that the trial court, in its opening instructions, failed to instruct the jury on the duties of left-turning motorists, as set

13

forth in La.R.S. 32:101. He also argues that the trial court should have used the phrase "case in chief" in those opening remarks to adequately put him on notice of the effect resting would have on his ability to present further evidence.

"At any time during the trial, the court may instruct the jury on the law applicable to any issue in the case." La.Code Civ.P. art. 1792(A). The trial court, then, was under no obligation to charge the jury before the presentation of evidence on the duties of left turning motorists. Our review of the trial court's pre-evidence soliloquy demonstrates that the trial court explained to the jury how the trial would proceed and who bore the burden of proof.

With regard to Tatum's complaint that the trial court did not use the phrase "case in chief," we do note that the trial court told the jury (emphasis added):

> Mr. Tatum is allowed to make his opening statement. Once again, opening statements -- and after those opening statements the plaintiff, Mr. Tatum, he will call witnesses and present evidence. Okay. When the plaintiff finishes or rests, as we say in the law, *if you rest your case that means you finish*.

We find that this statement, among the brief remarks the trial court made before the opening statements of the parties, adequately explained the concept of resting one's case.

We are also convinced that the trial court gave Tatum plenty of opportunity before the close of his case to put on his evidence. For example, the trial court pointedly asked him, "But, what I'm asking you is that, is this all -- is this -- is this your case that you'd like to submit to the jury?" Tatum replied, "Yes, that's it."

Because the trial court did not instruct the jury on the applicable law governing the case, because the trial court was not required to instruct the jury before the presentation of evidence, and— most importantly— because the trial court took the case out of the jury's hands by granting a directed verdict, we find no merit in assignment of error 1.

14

In his second assignment of error, Tatum complains that all witnesses should have been subject to the rule of sequestration. Sequestration is governed by La.Code Evid. art. 615, which reads, in pertinent part:

> **A. As a matter of right.** On its own motion the court may, and on request of a party the court shall, order that the witnesses be excluded from the courtroom or from a place where they can see or hear the proceedings, and refrain from discussing the facts of the case with anyone other than counsel in the case. In the interests of justice, the court may exempt any witness from its order of exclusion.
>
> **B. Exceptions.** This Article does not authorize exclusion of any of the following:
>
> (1) A party who is a natural person.

Parties who are natural persons, such as Doyal and Mr. and Mrs. Kinman, are not subject to the rule of sequestration. The only other witness besides Tatum himself was Hammond, who was called by Tatum as the first witness to testify. Hammond was the only witness to whom the rule could apply. Hammon d was then sequestered. This assignment of error lacks merit.

Tatum's fifth assignment of error addresses the trial court's grant of summary judgment. The trial court did not grant summary judgment. Summary judgments "pierce the pleadings and assess the proof in order to see whether there is a genuine need for trial." *Hines v. Garrett*, 04-806, p. 7 (La. 1/20/04), 876 So.2d 764, 769 (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587,106 S.Ct. 1348, 1356 (1986)). In the present matter, of course, there was a trial. There is quite a difference between a summary judgment and a directed verdict. Tatum's fifth assignment of error lacks merit.

We turn now to Tatum's third and fourth assignments of error. We begin the analysis with the recognition that Tatum is a pro se litigant.

Judges in matters litigated pro se face a quandary. On the one hand, unrepresented parties, because they are unversed in law and procedure, are allowed

latitude not afforded represented parties. *Hoffpauir v. Hoffpauir*, 21-473 (La.App. 3 Cir. 2/9/22), 333 So.3d 1262. On the other hand, "a judge should not give self-represented litigants an unfair advantage or create an appearance of partiality to the reasonable person." La.Code Jud.Conduct, Canon 3(A)(4).

Accordingly, our jurisprudence recognizes that a pro se litigant bears "the responsibility of familiarizing himself with applicable procedure and substantive law. His failure to do so does not give him any greater rights than a litigant represented by an attorney." *Hoffpauir*, 333 So.3d at 1270. Because the judge must remain a neutral arbiter, a pro se litigant is not entitled to have the trial court "intervene to remedy the shortcomings in his presentation[.]" *Magnon v. Magnon*, 23-299, pp. 13-14 (La.App. 3 Cir. 12/6/23), 375 So.3d 1053, 1061.

Louisiana Code of Civil Procedure Article 1632 prescribes the order in which a trial should be conducted:

(1)    The opening statements by the plaintiff and the defendant, in that order;

(2)    The presentation of the evidence of the plaintiff and of the defendant, in that order;

(3)    The presentation of the evidence of the plaintiff in rebuttal; and

(4)    The argument of the plaintiff, of the defendant, and of the plaintiff in rebuttal, in that order.

This order may be varied by the court when circumstances so justify.

It lies within the sound discretion of the trial court to reopen a case to allow additional evidence. *Franks v. State Nat'l Ins. Co.*, 22-169 (La.App. 3 Cir. 1/25/23), 355 So.3d 1174, *writ denied*, 23-259 (La. 4/18/23), 359 So.3d 512. An abuse of discretion occurs when the court acts in an arbitrary or capricious manner. *Oracle 1031 Exchange, LLC v. Bourque*, 11-1133 (La.App. 3 Cir. 2/8/12), 85 So.3d 736. "The abuse of discretion standard is highly deferential to the trial court's

16

determination under consideration." *Patrick v. Ctr. For Restorative Breast Surgery, LLC*, 22-550, p. 7 (La.App. 4 Cir. 9/2/22), 348 So.3d 176, 180.

The trial court acted well within its discretion to hold plaintiff to the standards of La Code Civ.P. art. 1632. As a neutral arbiter, the trial court is not allowed to render significant assistance to a pro se litigant, who is charged with familiarizing himself with the law and procedure applicable to his case.

We find that Tatum's third assignment of error lacks merit. He rested his case. He had been told what it meant to rest his case. The judge asked him repeatedly whether he was resting his case. Therefore, there was no exclusion of evidence in the matter. Documents and exhibits that have not been offered and admitted into evidence are not evidence.

This leads to Tatum's final assignment of error asserting that the trial court erred in granting a directed verdict.

Tatum argues, "If there is **some evidence** from which jurors could find that the party has met its burden, a trial judge must not grant a directed verdict." He further states, "Appellant contends that evidence introduced, submitted during opening argument was intended for jury's consideration, as trial court did not view appellant's evidence because courtroom monitor was oriented towards jury, away from judge's bench."

Documents not admitted by the trial court into evidence may not be considered. *Medical Review Panel for Bush*, 21-954 (La. 5/13/22), 339 So.3d 1118. Offering material into evidence is a formal act, and "[e]vidence not properly and officially offered and introduced cannot be considered, even if it is physically placed in the record. Documents attached to memoranda do not constitute evidence[.]" *Denoux v. Vessel Mgmt. Servs., Inc.*, 07-2143, p. 6 (La. 5/21/08), 983 So.2d 84, 88.

17

Tatum did not offer any medical records into evidence.  He did not testify to any injuries from any of the three accidents.  He did not submit any estimates or receipts for damage to his vehicle(s).

The Louisiana Supreme Court has explained:

Under Louisiana jurisprudence, most negligence cases are resolved by employing a duty/risk analysis. The determination of liability under the duty/risk analysis usually requires proof of five separate elements: (1) proof that the defendant's substandard conduct was a cause-in-fact of the plaintiff's injuries (the cause-in-fact element); (2) proof that the defendant's conduct failed to conform to the appropriate standard (the breach element); (3) proof that the defendant had a duty to conform his conduct to a specific standard (the duty element); (4) proof that the defendant's substandard conduct was a legal cause of the plaintiff's injuries (the scope of liability or scope of protection element); and (5) proof of actual damages (the damages element).

*Perkins v. Entergy Corp.*, 00-1372, p. 7 (La. 3/23/01), 782 So. 2d 606, 611.  Thus, because the plaintiff bears the burden of proof, he must prove each of the five elements in order to prevail.  That includes introducing proof of damages.  Tatum failed to testify about damages, and he failed to introduce evidence of damages.  Without introducing evidence of damages, Tatum did not carry his burden of proof.

## DISPOSITION

We find no error in the trial court's grant of a directed verdict.  The judgment of the trial court is affirmed.  All costs of this matter are taxed to Plaintiff/Appellant, Courtland Tatum, Sr.

**AFFIRMED.**

18